IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| WELLINGTON STUBBS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 10-3200 |
| MICHAEL NUTTER, EVERETT | : | |
| GILLISON, CITY OF PHILADELPHIA, | : | |
| BILL JOHNSON, TIM REDDICK, and | : | |
| CARY KING, | : | |
| Defendants. | : | |
| | : | |

DuBOIS, J.                                                                                                                                       August 30, 2010

**M E M O R A N D U M**

**I.    INTRODUCTION**

This is an action asserted under the First and Fourteenth Amendments to the U.S. Constitution, through 28 U.S.C. § 1983 ("Section 1983"), and Pennsylvania common law. Plaintiff's claims arise out of his employment by the City of Philadelphia, as Chief Inspector of the Police Advisory Commission. Plaintiff alleges that he was constructively discharged in retaliation for advising a member of the public to report to the press illegal activities of the Philadelphia Police Department. This Court has jurisdiction over plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over his related state law claim pursuant to 28 U.S.C. § 1367.

Presently before the Court is defendants' Motion to Dismiss in Part, pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, defendants seek dismissal of plaintiff's Section

1

1983 Fourteenth Amendment claims against all defendants, and plaintiff's wrongful termination claim against the City of Philadelphia. For the reasons set forth below, the Court grants defendants' motion to dismiss.

## II.    BACKGROUND[1]

Plaintiff was hired by the Police Advisory Commission, Managing Director's Office, on or about March 12, 2002.  (Compl. ¶ 13.)  Plaintiff was promoted to Chief Inspector of the Police Advisory Commission in June 2004.  (Compl. ¶ 14.)  As an employee of the City of Philadelphia, plaintiff was required to establish and maintain a bona fide residence within the City.  (Compl. ¶ 15.)  In May 2007, plaintiff was investigated by the Inspector General's Office in relation to his residency status.  (Compl. ¶ 15.)  A hearing was held on the matter in the summer of 2007, and plaintiff was "officially cleared."  (Compl. ¶ 16.)

On or about December 8, 2008, plaintiff met with Ventura Martinez, aka Benny Martinez, at the Police Advisory Commission.  (Compl. ¶ 17.)  Martinez reported to plaintiff that "there were illegal activities being conducted by the Philadelphia Police [Department's] Narcotic[s] Strike Force, and that [Martinez's] life was in danger due to his involvement."  (Compl. ¶ 17.)  Plaintiff subsequently aided Martinez in contacting a reporter for the Philadelphia Daily News, in order to "speak out about the police corruption."  (Compl. ¶ 17.)  A series of articles chronicling Martinez's allegations of police corruption were published in the

---

[1] The facts are taken from the Complaint and are presented in the light most favorable to plaintiff.

Daily News, beginning on February 9, 2009,[2] and running through August 2009. (Compl. ¶¶ 18, 19.) The articles resulted in an "investigation by the Philadelphia District Attorney's Office, [the] overturning of conviction[s], and other official governmental actions." (Compl. ¶ 19.)

In mid-February 2009, plaintiff was summoned to several meetings with Deputy Mayor Gillison and the Director of the Police Advisory Commission, Bill Johnson, to discuss plaintiff's involvement with Martinez. (Compl. ¶¶ 20-21.) In one of those meetings, Gillison stated in substance to plaintiff, "the Mayor is very upset with you about this and it is going to cost[] the City a lot of money." (Compl. ¶ 21.)

In May 2009, plaintiff was informed by Tim Reddick and Carey King from the Philadelphia Controller's Office that he was again being investigated for a residency requirement violation. (Compl. ¶ 22.) In an August 2009 meeting, Reddick, King, and Johnson also raised allegations that plaintiff failed to report and pay city taxes on certain income, that plaintiff failed to file required financial disclosure statements for 2008, and that plaintiff had excessive undocumented sick leave time. (Compl. ¶ 25.) Plaintiff met once more with Johnson and Gillison in September 2009, to discuss the City Controller's Office Report regarding plaintiff's alleged residency violation. (Compl. ¶ 27.) On or about November 13, 2009, plaintiff was forced to resign from the Police Advisory Commission, under threat to his pension benefits. (Compl. ¶ 29.)

On July 1, 2010, plaintiff filed the instant Complaint, alleging that he was constructively

---

[2] In the Complaint, plaintiff avers that certain events occurred in 2010. However, when viewed in the context of all of the allegations in the Complaint, it appears that the references to 2010 are typographic errors, and that the alleged events must have taken place in 2009.

discharged in retaliation for advising Martinez to contact the press regarding police misconduct, in violation of his First and Fourteenth Amendment rights, and in contravention of Pennsylvania common law prohibiting wrongful termination.

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff . . . ." Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotations omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach" which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations

4

which constitute nothing more than "legal conclusions" or "naked assertions."  Twombly, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded.  Iqbal, 129 S. Ct. at 1950.  The court then assesses "the 'nub' of the plaintiff['s] complaint – the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief.  Id.

IV. DISCUSSION

Defendants do not challenge plaintiff's First Amendment retaliation claim.  Rather, defendants seek dismissal of plaintiff's Section 1983 Fourteenth Amendment claims, averring equal protection and substantive and procedural due process violations as to all defendants.  Defendants also seek dismissal of plaintiff's Pennsylvania common law wrongful termination claim against the City of Philadelphia.  The Court will address each of these claims in turn.

A. **Fourteenth Amendment – Equal Protection Claim**

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  In order to establish a prima facie case of discrimination under the Equal Protection Clause, a plaintiff must demonstrate that he is a member of a protected class and that he "received different treatment than that received by other similarly-situated individuals."  Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002) (citing Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992)).[3]

---

[3] The Court notes that in Village of Willowbrook v. Olech, the Supreme Court recognized a "class-of-one" equal protection theory, which does not require proof of membership in a particular protected class.  528 U.S. 562 (2000) (per curiam).  However, the Supreme Court subsequently clarified in Engquist v. Oregon Department of Agriculture, that a "class-of-one"

Plaintiff avers in the Complaint that he "is a member a protected class[,] in that he engaged in United States Constitutional First Amendment activity," and that he was effectively terminated in "retaliation" for doing so. (Compl. ¶¶ 31, 37.) This claim arises under the First Amendment and not the Equal Protection Clause. See Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997); Iovinelli v. Pritchett, No. 06-C-6404, 2008 WL 2705446, at *20 (N.D. Ill. July 9, 2008) (plaintiff's equal protection claim averring that he was "treated differently because he exercised his constitutional rights under the First Amendment" was a "mere rewording of [his] First Amendment-retaliation claim," which was "properly addressed in another count of his complaint"). As the Third Circuit has observed, "[a] pure or generic retaliation claim [ ] simply does not implicate the Equal Protection Clause." Thomas v. Independence Twp., 463 F.3d 285, 298 n.6 (3d Cir. 2006) (quoting Watkins, 105 F.3d at 1354). Accordingly, the Court grants defendants' motion to dismiss plaintiff's equal protection claim as to all defendants. See O'Fee v. City of Philadelphia, No. 09-2724, 2009 WL 3172759, at *4 (E.D. Pa. Oct. 2, 2009) ("because we find that [plaintiff] has merely rephrased his First Amendment retaliation claim, we will dismiss his Equal Protection retaliation claim.").[4]

### B. Fourteenth Amendment – Due Process Claims

Plaintiff avers in the Complaint that defendants' actions "deprive[d] Plaintiff of . . . [his]

---

equal protection claim is not cognizable in the public employment context. 553 U.S. 591 (2008).

[4] Plaintiff states in his response to defendants' motion to dismiss that he is "also an African-American male, which is a recognized protected class, and a suspect class when examining an equal protection claim." (Pl.'s Resp. at 8.) However, nowhere in the Complaint does plaintiff allege that he was terminated or retaliated against based on his race, or for that matter, that he is African-American. Therefore, the Court does not consider an equal protection claim based on membership in such a protected class.

Fourteenth Amendment rights in liberty in his person and employment, free speech, due process to acquire and not be deprived of property without valid due process of law . . . ." (Compl. ¶ 38.) As this language appears to implicate both procedural and substantive due process rights pursuant to the Fourteenth Amendment, the Court analyzes the facts alleged in the Complaint under each of the two theories.

1. **Procedural Due Process**

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006). Plaintiff argues that the Complaint sets forth a procedural due process claim, based on a deprivation of plaintiff's liberty interest in his reputation.[5]

To make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must satisfy the "stigma-plus" test; he must "show a stigma to his reputation, plus

---

[5] In their motion, defendants argue that plaintiff's procedural due process claim, at it relates to plaintiff's *property* interest in his employment with the City, should be dismissed. (Defs.' Mot. at 6-7.) In his response, plaintiff concedes that the Complaint does not properly state a claim on that ground. (Pl.'s Mot. at 5-6.) Therefore, to the extent that the Complaint avers any procedural due process claim based upon deprivation of a property interest in plaintiff's employment, that claim is dismissed by agreement of the parties. In any event, the Complaint fails to state such a claim, because plaintiff does not allege that he was denied notice or an opportunity to be heard with respect to the alleged constructive discharge. Jakimowicz v. City of Philadelphia, No. 07-3327, 2008 WL 383329, at *2 (E.D. Pa. Feb. 12, 2008) (dismissing procedural due process claim where plaintiff failed to allege "that the grievance process was defective, that he was not provided with notice, or that he did not have an opportunity to be heard").

deprivation of some additional right or interest." Hill, 455 F.3d at 236. "In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest. The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.' When such a deprivation occurs, the employee is entitled to a name-clearing hearing." Id. "In order to satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements (1) were made publicly, and (2) were false." Id. Additionally, a plaintiff must aver that he was not given the name-clearing hearing to which he is entitled by the due process clause.[6] Id. at 239.

The Court concludes that plaintiff's Complaint fails to state a claim for deprivation of a liberty interest in plaintiff's reputation. Nowhere in the Complaint does plaintiff state that the charges of improper residency, excessive undocumented sick time, tax evasion, or failure to make required financial disclosures, were false. Nor does the Complaint aver that any of these charges were ever made public.[7] Finally, the Complaint contains no allegation that the City neglected to provide him with a name-clearing hearing, as required by the due process clause. For these reasons, the Court grants defendants' motion to dismiss plaintiff's procedural due

---

[6] The Court notes that a public employee need not demonstrate a property interest in his employment in order to state a claim for deprivation of a liberty interest under the due process clause. See Hill, 455 F.3d at 238.

[7] Plaintiff states in his response to defendants' motion that "Plaintiff's discharge and tax evasion charge by the City (Employer) was disseminated to the public in a press release." (Pl.'s Resp. at 7.) However, this allegation is not made anywhere in plaintiff's Complaint.

process claim against all defendants.

### 2. Substantive Due Process

"While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 229 (1985) (Powell, J. concurring) (internal citations omitted). Thus, "not all property interests worthy of due process protections are protected by the concept of substantive due process." Homar v. Gilbert, 63 F. Supp. 2d 559, 571-72 (M.D. Pa. 1999) (internal quotations omitted) (quoting Reich v. Beharry, 883 F.2d 239, 244 (3d Cir. 1989)). Rather, "for a property interest to be protected for purposes of *substantive due process*, it must be 'fundamental' under the United States Constitution." Hill, 455 F.3d at 235 n.12 (emphasis in original).

The Third Circuit has held explicitly that "public employment is not a fundamental right entitled to substantive due process protection." Id. (citing Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 142-43 (3d Cir. 2000)); see also Jakimowicz v. City of Philadelphia, No. 07-3327, 2008 WL 383329, at *2 (E.D. Pa. Feb. 12, 2008); Williams v. Pennsylvania State Police – Bureau of Liquor Control Enforcement, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000). Moreover, reputational harm resulting from the loss of public employment is not actionable under a substantive due process theory. See Hill, 455 F.3d at 235 n.12. Guided by this precedent, the Court concludes that plaintiff has failed to state a claim that his substantive due process rights were violated, and dismisses that claim as to all defendants.

### C. Wrongful Termination Claim

Pennsylvania courts recognize an exception to the doctrine of at-will employment when

an employer "terminates an employee for reasons which violate public policy." McGovern v. Jack D's, Inc., No. 03-5547, 2004 WL 228667, at *5 (E.D. Pa. Feb. 3, 2004) (citing Hennessy v. Santiago, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998)); McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287 (Pa. 2000) ("An employee will be entitled to bring a cause of action for [ ] termination of [an at-will employment] relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth."). In order to succeed on a claim of common law wrongful termination, a plaintiff "in some way must allege" that his termination implicates, undermines, or violates one such policy. McLaughlin, 750 A.2d at 289.

Plaintiff asserts a claim of wrongful termination against the City of Philadelphia and other individual defendants, alleging that he was discharged in violation of Pennsylvania's public policy protecting freedom of speech under the First Amendment. However, pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"), the City of Philadelphia is immune from liability for a wrongful termination tort claim. The Tort Claims Act provides absolute immunity from all state tort claims, with eight enumerated exceptions, none of which cover a claim for wrongful termination. See 42 Pa.C.S.A. §§ 8541-42; Dewees v. Haste, 620 F. Supp. 2d 625, 641 (M.D. Pa. 2009) (citing McNichols v. Commonwealth, 804 A.2d 1264, 1267 (Pa. Commw. Ct. 2002); Jakimowicz, 2008 WL 383329, at *2. Furthermore, plaintiff concedes that "the Act does provide the City with immunity." (Pl.'s Resp. at 2.) Accordingly, the Court grants defendants' motion to dismiss plaintiff's wrongful termination

claim against the City of Philadelphia.[8]

## V. CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss in Part is granted. The Court dismisses plaintiff's Section 1983 Fourteenth Amendment claims – alleging violations of the Equal Protection Clause and substantive and procedural due process rights – against all defendants, and plaintiff's wrongful termination claim against the City of Philadelphia. This ruling leaves for adjudication plaintiff's First Amendment retaliation claims against all defendants under Count One of the Complaint, plaintiff's Monell claim under Count Two, and plaintiff's wrongful termination claims against the individual defendants under Count Three, and is without prejudice to the right of plaintiff to file and serve and amended complaint within 20 days if warranted by the facts.

An appropriate order follows.

---

[8] The Court does not rule on the sufficiency of plaintiff's wrongful termination against the individual defendants, since defendants' motion does not seek dismissal of those claims.